IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM GARVIN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-615 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| LIBERTY BOROUGH, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

## I. MEMORANDUM

For the reasons that follow, Jon B. Kimberland and Ronald Meluskey's[1] Motion to Dismiss (Doc. 22) will be GRANTED IN PART and DENIED IN PART. In addition, Raymond Johnson, John R. Legin and Liberty Borough's Motion to Dismiss (Doc. 26) will be DENIED.

**Background**

Mr. William Garvin ("Plaintiff") was the owner of Liberty Manor, a personal care home in McKeesport, Pennsylvania. Sec. Am. Compl. (Doc. 21) at ¶¶ 6, 13. Under Plaintiff's ownership, Liberty Manor housed approximately thirty residents at any given time; the residents required assistance with respect to their personal care but did not require skilled nursing care. Id. at ¶¶ 13-14. Many residents were prescribed medications, and those medications were distributed to residents by Liberty Manor employees referred to as "med passers." Id. at ¶ 15. Plaintiff alleges that he stored residents' prescription medications in his office in accordance with the relevant Pennsylvania regulations in order to prevent theft. Id. at ¶¶ 16-19. Plaintiff

---

[1] This Defendant's name is spelled "Melusky" in the case caption, but "Meluskey" in all of his filings. He does not address the disparity in spelling in any of his papers. The Court will maintain the case caption as stated on the docket, but will adopt Defendant's spelling of his own name throughout this Memorandum and Order.

1

alleges that he would only release medications when an authorized "med passer" signed them out, to be distributed to residents.  Id. at ¶ 16.

At all times relevant to the instant case, Mr. Raymond Johnson ("Defendant Johnson") was a law enforcement officer of Liberty Borough, who Plaintiff alleges frequently visited Liberty Manor.  Id. at ¶¶ 8, 20.  Plaintiff alleges that during one visit, Mr. Johnson commented to Plaintiff that he should keep the African American residents inside because there were too many of them and they were scaring white people who lived nearby.  Id. at ¶ 21.

Plaintiff alleges that on or about March 1, 2013, two Liberty Manor employees, Mary Cherney and Lori Jarusinsky, informed Defendant Johnson that they had stolen a bottle of clonazepam, a psychoactive drug, from Liberty Manor.  Id. at ¶ 22.  Plaintiff further alleges that, when interviewed by Defendant Johnson, Ms. Cherney and Ms. Jarusinsky denied that Plaintiff was involved in distributing narcotics.  Id. at ¶ 27.  Plaintiff alleges that in the affidavit of probable cause, Defendant Johnson falsely stated that Ms. Jarusinsky informed him that Plaintiff had given her Vicodin.  Id. at ¶ 28.  Plaintiff alleges that Mr. Johnson made this false statement in order to obtain a search warrant for Liberty Manor.  Id.

Plaintiff alleges that on or about March 4, 2013, Defendant Johnson and another law enforcement officer of Liberty Borough, Mr. John Legin ("Defendant Legin"), obtained a search warrant and searched Liberty Manor, seizing medications from Plaintiff's office.  Id. at ¶ 29-30.  Plaintiff alleges that all seized medications had been lawfully obtained, retained and stored by him in the ordinary course of business.  Id. at ¶ 30.  Plaintiff further alleges that Defendant Johnson misclassified the evidence seized in order to pursue criminal charges against Plaintiff.  Id. at ¶ 31.

On or about April 4, 2013, Defendant Johnson filed a criminal complaint against Plaintiff for possession of a controlled substance, possession with intent to deliver, criminal conspiracy, theft by unlawful taking, and receiving stolen property, for which Plaintiff was arrested that same day. Id. at ¶¶ 32, 34.  Plaintiff alleges that said complaint lacked probable cause, and that Defendant Johnson obtained the warrant for his arrest based on a "flawed affidavit of probable cause." Id. at ¶¶ 32-33.  On or about April 4, 2014, Plaintiff voluntarily surrendered to Defendant Johnson and was arrested. Id. at 34.  On July 2, 2014, all charges against Plaintiff were withdrawn. Id. at ¶ 35.  Plaintiff alleges that Defendants Legin and Johnson conspired in "the aforementioned illegal acts" and were both motivated by racial animus, as previously expressed to Plaintiff by Defendant Johnson. Id. at ¶ 36.  Plaintiff alleges that Defendant(s) John and/or Jane Doe, superior officers to Defendants Johnson and Legin, reviewed and approved Defendants Johnson's and Legin's decision to file these criminal charges. Id. at ¶¶ 37-38.

Plaintiff alleges that sometime after the March 4, 2013 search of Liberty Manor, but prior to his April 4, 2013 arrest, Defendant Johnson contacted the Bureau of Human Services Licensing for the Pennsylvania Department of Public Welfare and falsely informed the department that Plaintiff had been arrested on March 4, 2013, the day of the search. Id. at ¶ 39. Plaintiff further alleges that Mr. Jon Kimberland ("Defendant Kimberland") and Mr. Ronald Meluskey ("Defendant Meluskey"), working for the Pennsylvania Department of Public Welfare, failed to conduct "any meaningful or proper investigation" of the alleged charges against Plaintiff and yet informed Plaintiff that he could no longer remain administrator of Liberty Manor. Id. at ¶¶ 40-41.  Without an administrator, Defendants Kimberland and Meluskey would be required to implement an emergency removal of all Liberty Manor residents. Id. at ¶ 41. Plaintiff alleges that Defendants Kimberland and Meluskey would not allow Plaintiff to turn over

3

his role to either a prospective buyer or to the former Liberty Manor administrator in order to prevent the closing of the facility. Id. at ¶ 43. Plaintiff alleges that Defendants Kimberland and Meluskey had all residents removed from Liberty Manor and revoked Plaintiff's license, and as a result, the facility closed on March 4, 2013. Id. at ¶¶ 44-45. Due to the closure, Plaintiff was unable to complete the sale of his business, a process he commenced prior to the March 4, 2013, search. Id. at ¶¶ 42, 45.

Plaintiff filed his Second Amended Complaint (the "Complaint") on November 10, 2014, asserting causes of action for Malicious Prosecution in violation of § 1983 and the Fourth Amendment against Defendants Liberty Borough, Doe, Johnson, and Legin[2] (Count I); Unlawful Arrest in violation of § 1983 and the Fourth Amendment against Defendants Liberty Borough, Doe, Johnson, and Legin (Count II); § 1983 action for Unlawful Search and Seizure in violation of the Fourth Amendment against Defendants Liberty Borough, Doe, Johnson, and Legin (Count III); §1983 Action for Violation of the Fourteenth Amendment's Due Process Clause against all Defendants (Count IV); §1985 Claim for Conspiracy to Violate the Fourteenth Amendment against "individual Defendants"[3] (Count V); and Intentional Interference with a Prospective Contractual Relationship against all Defendants (Count VI). Sec. Am. Compl. (Doc. 21). On December 23, 2014, Defendants Kimberland and Meluskey filed a Motion to Dismiss Counts IV, V, and VI of Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction, and

---

[2] The Court notes that Plaintiff fails to specify whether each count alleged against Defendants Johnson, Legin and Doe are alleged against them in their official and/or individual capacities. The case caption indicates that are sued in both their official and individual capacities, and as Plaintiff does not indicate otherwise, the Court will interpret all counts against them to be alleged against said Defendants in both their individual and official capacities.

[3] The Court infers that this Count is intended against all Defendants with the exception of Liberty Borough.

for failure to state a claim. Defs.' Mot. to Dismiss (Doc. 22). Defendants Liberty Borough, Johnson, and Legin filed a Motion for Partial Dismissal of the Fourteenth Amendment claims and § 1985 claims of Plaintiff's Second Amended Complaint on January 13, 2015, arguing that Plaintiff's Fourteenth Amendment claims are subsumed by his Fourth Amendment claims, and that he fails to state a § 1985 conspiracy claim.[4] Defs.' Mot. for Partial Dismissal (Doc. 26).[5]

## ANALYSIS

A.  *Action for Violation of the Fourteenth Amendment (Count IV)*

In Count IV of the Complaint, Plaintiff alleges that all Defendants deprived him of his right to own and use real property and pursue an occupation, in violation of the Due Process Clause of the Fourteenth Amendment. Sec. Am. Compl. at ¶ 90-91, 98. All moving Defendants ask the Court to dismiss this count, and their arguments will be addressed in turn.

Defendants Liberty Borough, Johnson and Legin argue that Count IV should be dismissed because Plaintiff's Fourteenth Amendment claim is subsumed by his Fourth Amendment claim. Defs.' Br. in Supp. (Doc. 27) at 4 (citing Albright v. Oliver, 510 U.S. 266). "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." Albright, 510 U.S. at 273; see also Donahue v. Gavin, 280 F.3d 371 (3d Cir. 2002) (citing Albright, 510 U.S. 266).

---

[4] Defendants fail to specify which counts they would like the Court to dismiss. The Court infers that Defendants seek to dismiss Count IV, as that count involves the Fourteenth Amendment and is alleged against all Defendants, and that Defendants seek to dismiss Count V against Defendants Johnson and Legin, as those counts involve § 1985 but are alleged only against the individual Defendants and not Liberty Borough.

[5] No parties moved to dismiss Counts I, II, or III.

For the proposition that "a particular Amendment provides an explicit textual source of constitutional protection against" the actions alleged as violations of the Fourteenth Amendment violations under Count IV, Defendants rely on two cases, neither of which have any bearing here. Id. at 4-5 (citing Graham v. Connor, 490 U.S. 386 (1989); Chatman v. City of Johnstown, PA., 131 F. App'x 18 (3d Cir. 2005)). Both Graham, 490 U.S. 386, and Chatman, 131 F. App'x 18, hold that the Fourth Amendment, rather than the Fourteenth Amendment, provides the constitutional basis for evaluating claims of excessive force. However, Plaintiff makes no excessive force allegations. Rather, Plaintiff alleges deprivation of his right to property and right to pursue an occupation. As such, Defendants Liberty Borough, Johnson and Legin have failed to demonstrate that Plaintiff's Fourteenth Amendment claim as stated in Count IV should be dismissed pursuant to Albright, given their burden as the moving parties. Their Motion to Dismiss Count IV will be denied.

Defendants Kimberland and Meluskey argue that abstention under Younger v. Harris, 401 U.S. 37 (1971), is appropriate here and therefore, Count IV should be dismissed. Defs.' Br. in Supp. (Doc. 23) at 5. The Court in Younger, 401 U.S. at 46, outlined the federal policy of abstaining from intervening in state criminal prosecutions. This doctrine has been expanded to include "noncriminal judicial proceedings when important state interests are involved." Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982). Defendants Kimberland and Meluskey state that Younger abstention is appropriate where "(1) there is a pending state judicial proceeding[6]; (2) the proceeding implicates important state interests; and (3) the state proceeding affords an adequate opportunity to raise constitutional

---

[6] As to the first factor, Plaintiff is clearly involved in a pending state judicial proceeding. Defs.' Br. in Supp. (Doc. 23), Ex. 1. He is challenging the Pennsylvania Department of Public Welfare's Order/determination in the Commonwealth Court of Pennsylvania. Id.

challenges." Zahl v. Harper, 282 F.3d 204, 209 (3d Cir. 2002) (citing Middlesex, 457 U.S. at 432).

Although not discussed by either Plaintiff or the moving Defendants, in New Orleans Public Service, Inc. v. Council, 491 U.S. 350 (1989) ("NOPSI"), the Supreme Court explained that that Younger is not generally applicable to all cases that involve parallel state and federal proceedings. Id. at 361. The Younger doctrine applies in instances of state criminal prosecutions, civil enforcement proceedings, and "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. This Court has noted that the Supreme Court more recently clarified that the "mechanical" three-factor approach attributed to Middlesex conflicts with the Court's "'dominant instruction' that 'abstention from the exercise of federal jurisdiction is the exception and not the rule.'" Thomas v. Piccione, 2014 WL 1653066, *2 (2014) (quoting Sprint Communications, Inc. v. Jacobs, 134 S.Ct. 584 (2013) ("Abstention is not in order simply because a pending state-court proceeding involves the same subject matter.")). Abstention is limited to such "exceptional circumstances" as described by the Supreme Court in NOPSI. Id. (quoting NOPSI, 491 U.S. at 361).

As Defendants Kimberland and Meluskey apply the doctrine stated in Middlesex mechanically, and fail to discuss how the present circumstances qualify as "exceptional circumstances" as contemplated in Sprint Communications, they have not met their burden of demonstrating that Younger abstention applies. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980) (noting that on a motion to dismiss made pursuant to Rule 12(b)(6), for failure to state a claim, the burden of proof lies with the moving party); Richard Lawson Excavating, Inc. v. N.L.R.B., 333 F.Supp.2d 358 (W.D. Pa. 2004). Defendants Kimberland and Meluskey's Motion to Dismiss Count IV will be denied.

7

B.   *Conspiracy to Violate the Fourteenth Amendment (Count V)*

Defendants Kimberland and Meluskey argue that the Court should abstain from hearing Count V, for conspiracy to violate Plaintiff's Fourteenth Amendment rights under 42 U.S.C. § 1985(2), also pursuant to Younger. Defs.' Br. in Supp. (Doc. 23) at 7. Alternatively, they argue that Plaintiff has not met the pleading requirements under 42 U.S.C. § 1985(2) as he has not alleged a racially discriminatory motive for their actions, and therefore his conspiracy claim should be dismissed. Id. at 7-9. Defendants Johnson and Legin[7] join the arguments of Defendants Kimberland and Meluskey with respect to Count V, and argue nothing further. Defs.' Br. in Supp. (Doc. 27) at 5. For the reasons set forth *supra* at Section A, Defendants' request that the Court abstain from entertaining Count V pursuant to Younger will be denied.

With respect to their alternative argument, Defendants note that the first portion of 42 U.S.C. § 1985(2) is inapplicable to the present case. Defs.' Br. in Supp. (Doc. 23) at 8. Plaintiff does not dispute this. Pl.'s Br. in Opp'n (Doc. 28) at 4; Pl.'s Br. in Opp'n (Doc. 20) at 3.[8] The second portion of section 1985(2) sets forth that:

> if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

---

[7] Count V is not alleged against Liberty Borough.

[8] Rather than addressing Defendants' arguments in his Brief in Opposition, Plaintiff "renews" his argument set forth in a previously issued brief to the Court. Pl.'s Br. in Opp'n (Doc. 28) at § B (directing the Court to consider his arguments as stated in Pl.'s Br. in Opp'n (Doc. 20)). Problematically, Plaintiff's previous submission cites to paragraphs of a previous complaint, and those paragraph numbers were affected when he amended said complaint. Plaintiff is instructed that the next time he wishes to "renew" previously articulated arguments, he should restate those arguments in a current submission and correct any affected citations.

Defendants contend that a claim pursuant to this portion of § 1985(2) requires the allegation of a class-based discriminatory animus. Defs.' Br. in Supp. (Doc. 23) at 8 (citing Brawer v. Horowitz, 535 F.2d 830, 840 (3d Cir. 1976)). The crux of Defendants Kimberland and Meluskey's argument is that, contrary to Plaintiff's position, nowhere in the Complaint does Plaintiff allege that they specifically were motivated such racial animus. Id. (citing Brawer v. Horowitz, 535 F.2d 830).

Plaintiff concedes that he is "unable to allege that the motivation for Defendants Kimberland and Melusky [*sic*] role in the conspiracy was race-based." Pl.'s Br. in Opp'n (Doc. 20) at 3. He posits that he has "clearly set forth that Defendants Kimberland and Melusky conspired with the Defendant officers, whose motivations were race-based, to deprive Plaintiff of his civil rights." Id. Plaintiff supplies no legal authority for the proposition that evidence of racial animus on the part of one or two co-defendants establishes the same animus on the part of other co-defendants, even if those defendants engaged in certain actions in concert. Given Plaintiff's concession that he cannot establish a racial or other class-based discriminatory animus on the part of Defendants Kimberland and Meluskey, and his failure to cite to any legal authority in support of his contention that Defendant Johnson and Legin's motivations should be attributed to their co-defendants, the Court finds that Plaintiff has not sufficiently plead a § 1985(2) conspiracy claim as against Defendants Kimberland and Meluskey, and their Motion to Dismiss Count V as alleged against them will be granted.

The Court finds that Defendants Johnson and Legin have not demonstrated that Plaintiff fails to state a § 1985(2) conspiracy claim *as against them*. Defendants Kimberland and Meluskey make arguments based only on the facts alleged regarding their specific actions and motivations. Defs.' Br. in Supp. (Doc. 23) at 7-9. They simply do not address Plaintiff's

9

allegations as to Defendants Johnson and Legin. Id. As such, Defendants Johnson and Legin cannot sustain their analytic burden by "incorporating" the arguments articulated by Defendants Kimberland and Meluskey. Without any analysis specific to Defendants Johnson and Legin, the Court must deny their Motion to Dismiss Count V of the Complaint as against them.

C.   *Intentional Interference with a Prospective Contractual Relationship (Count VI)*

Defendants Kimberland and Meluskey move to dismiss Count VI of the Complaint based on immunity under the Political Subdivision Tort Claims Act ("PSTCA" or "the Act"). 42 Pa. Cons. Stat. § 8542 (West). Def.'s Br. in Supp. (Doc. 23) at 9.

Pennsylvania Commonwealth officials and employees, "acting within the scope of their duties," generally "enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity." 1 Pa. Cons. Stat. Ann. § 2310 (West). Sovereign immunity applies whether Commonwealth employees are sued in their official or individual capacities, so long as the employees are acting within the scope of their duties. See Brautigam v. Fraley, 684 F. Supp. 2d 589, 593 (M.D. Pa. 2010); Maute v. Frank, 657 A.2d 985, 986 (Pa. Super. Ct. 1995). Immunity is waived if: 1) the alleged act is a negligent act for which damages would be recoverable under common law or statute, and 2) one of nine exceptions from immunity applies.[9] 42 Pa. Cons. Stat. Ann. § 8522 (West). Those exceptions are to be "strictly construed and narrowly interpreted." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Commw. Ct. 2003). The tort of intentional interference with a prospective contractual relationship does not fall under any of the nine exceptions in the statute. See MFS, Inc. v. DiLazaro, 771 F. Supp. 2d 382, 455 (E.D. Pa. 2011) aff'd, 476 F. App'x 282 (3d Cir.

---

[9] The nine exceptions are: 1) vehicle liability, 2) medical-professional liability, 3) care, custody or control of personal property, 4) Commonwealth real estate, highways and sidewalks, 5) potholes and other dangerous conditions, 6) care, custody or control of animals 7) liquor store sales, 8) National Guard activities, and 9) toxoids and vaccines.

2012). Therefore, if Defendants Kimberland and Meluskey were acting within the scope of their employment, they are entitled to sovereign immunity with respect to Count VI. See Brautigam, 684 F. Supp. 2d at 593; Maute, 657 A.2d at 986.

Once again, Plaintiff "renews" his arguments submitted in a previous brief, referring the Court to consider his prior Brief in Opposition. Pl.'s Br. in Opp'n (Doc. 28) at 5; see Pl.'s Br. in Opp'n (Doc. 20) at 5. Plaintiff argues that Defendants Kimberland and Meluskey should not be afforded immunity because they acted outside the scope of their employment in performing "emergency shutdowns and revocations of licenses without conducting any investigation whatsoever." Id.

Pennsylvania courts apply Section 228 of the Restatement (Second) of Agency to determine whether an employee has acted within the scope of employment. See, e.g., Matsko v. United States, 372 F.3d 556, 559 (3d Cir. 2004); Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000). The Restatement provides that an employee's conduct is within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master, and (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master." Restatement (Second) of Agency § 228 (1958); see also Brumfeld, 232 F.3d at 380.

Plaintiff argues that the actions taken by Defendants Kimberland and Meluskey in revoking Plaintiff's license and closing Liberty Manor are not of a kind that Defendants are employed to perform, and thus subsection "a" of the doctrine is not satisfied and Defendants are not entitled to immunity. Pl.'s Br. in Opp'n (Doc. 20) at 4. However, just because an act is allegedly unauthorized or malicious does not mean that it occurred outside the scope of

employment. See Strothers v. Nassan, No. 08-1624, 2009 WL 976604, at *8 (W.D. Pa. Apr. 9, 2009) (reasoning that "even unauthorized actions taken by an employee can fall within the scope of his or her employment if they are 'clearly incidental' to his or her employer's objectives") (citing Brumfeld, 232 F.3d at 381); Jones v. Pennsylvania Minority Bus. Dev. Auth., No. 97-4486, 1998 WL 199653, at *3 (E.D. Pa. Apr. 23, 1998) (holding that even assuming Commonwealth employees' malicious motives for denial of a loan request, their actions still fell within the scope of employment). At all times relevant to the instant case, Defendant Kimberland was the Residential Licensing Administrator for the Pennsylvania Department of Public Welfare ("PADPW"), and Defendant Meluskey was the Director of the Bureau of Human Services Licensing for the PADPW. Sec. Am. Compl. at ¶¶ 11-12. Revoking licenses and closing facilities seem to be actions of the sort that Defendants were employed to perform. Even making all inferences in a light most favorable to Plaintiff and assuming that Defendants Kimberland and Meluskey engaged in unauthorized conduct by failing to conduct a proper investigation prior to revoking Plaintiff's license and closing Liberty Manor, the revocation and closing themselves are "clearly incidental" to Defendants' employer's objectives. Strothers, 2009 WL 976604 at *8 (citing Brumfeld, 232 F.3d at 381). Plaintiff argues that Defendants acted improperly, but not that their actions inherently were of a sort other than that which they were employed to perform, or that they were not incidental to their employer's objectives. As such, Defendants acted within the scope of their employment, they are entitled to sovereign immunity, and their Motion to Dismiss Count VI of the Complaint as against them will be granted.

## I.     ORDER

For the reasons stated above, Defendants Kimberland and Meluskey's Motion to Dismiss (Doc. 22) is **GRANTED IN PART and DENIED IN PART**.  The Motion to Dismiss is DENIED with respect to Count IV, and it is GRANTED with respect to Counts V and VI.

Raymond Johnson, John R. Legin and Liberty Borough's Motion to Dismiss (Doc. 26) is DENIED.

Specifically, the following claims are hereby **DISMISSED WITH PREJUDICE:** Plaintiff's claim for Intentional Interference with a Prospective Contractual Relationship as alleged in Count VI as against Defendants Kimberland and Meluskey.

The following claims are hereby **DISMISSED WITHOUT PREJUDICE** to Plaintiff filing an amended complaint, if appropriate:  Plaintiff's § 1985(2) conspiracy claim as alleged in Count V as against Defendants Kimberland and Meluskey.  **Plaintiff's amended complaint is due on or before August 20, 2015.  Failure to file an amended complaint by this date will result in these claims being dismissed with prejudice**.

IT IS SO ORDERED.


August 11, 2015                                         s\Cathy Bissoon
                                                        Cathy Bissoon
                                                        United States District Judge

cc (via ECF email notification):

All Counsel of Record